**In the United States District Court
for the District of Kansas**

———————

Case No. 22-cv-01107-TC

———————

CLINTON GOULDNER,

*Plaintiff*

v.

MONARCH INVESTMENTS & MANAGEMENT GROUP, LLC,

*Defendant*

———————

**MEMORANDUM AND ORDER**

Clinton Gouldner slipped and fell on a common walkway at Brookwood Apartments in Wichita in February 2021. Doc. 56 at § 2.a.i. He alleges that Monarch Investments and Management Group, which owned and operated Brookwood Apartments, is responsible for his injuries. Doc. 56 at § 4.a. Monarch moves for summary judgment on all Gouldner's claims. Doc. 57. For the following reasons, that motion is granted in part and denied in part.

**I**

**A**

Summary judgment is proper when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim's resolution. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). And disputes over those material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* Disputes—even hotly contested ones—over facts that are not essential to the claims are irrelevant. Indeed, belaboring such disputes undermines the efficiency Rule 56 seeks to promote.

1

At the summary judgment stage, material facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* D. Kan. R. 56.1(d). To determine whether a genuine issue of fact exists, a court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1138 (10th Cir. 2011); *see also Allen v. Muskogee*, 119 F.3d 837, 839–40 (10th Cir. 1997). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler*, 144 F.3d at 671–72, 674, or unsupported by the record as a whole, *see Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986); *Georgelas v. Desert Hill Ventures, Inc.*, 45 F.4th 1193, 1197 (10th Cir. 2022). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters. *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137–38 (10th Cir. 2016); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

**B**

Clinton Gouldner was a resident of Brookwood Apartments, an apartment complex in Wichita owned and managed by Monarch Investment and Management Group. Doc. 56 at § 2.a.ii.[1] Sometime during February 6, 2021, Gouldner left his apartment for work. Doc. 62 at ¶ 5. Gouldner does not recall whether there was precipitation on the walkway outside his apartment when he left for work. *Id.* at ¶ 11. Gouldner returned home after work sometime between 6:15 and 6:30 p.m. *Id.* at ¶ 10. Later, at approximately 11 p.m., he slipped and fell on a walkway outside his apartment. Doc 62 at ¶¶ 1, 6. The walkway was "an interior walkway" that leads from the parking lot to his apartment, other apartments, the pool, and the management office. Doc. 62 at ¶ 16.

---

[1] All citations are to the document and page numbers assigned in the CM/ECF system. Facts are either uncontroverted or, where controverted, are stated in the light most favorable to the nonmovant Gouldner.

February 6 was a cold and snowy Saturday in Wichita. The temperature fell throughout the day, from 31 degrees at 10:53 a.m. to 16 degrees at 10:53 p.m., cold enough for snow to fall and ice to form. Doc. 62 at ¶ 9. Precipitation on February 6 began at 9 a.m., Doc. 62 at ¶ 34, and continued until roughly 3 p.m., Doc. 62 at ¶ 12. When Gouldner returned home around 6:15 p.m., there was snow on the concrete walkway leading to the wooden steps used to access his apartment. Doc. 62 at ¶ 13. When Masen Schafer, another Brookwood tenant, returned home around 9 p.m., he observed patches of ice on the walkways at Brookwood. *Id.* at ¶ 25. But when Gouldner left his apartment around 11 p.m., he did not see any ice on the walkway. Doc. 62 ¶ 17.

There is evidence that the walkways were at least partially covered with snow and ice prior to the morning of February 6. Doc. 62 at ¶ 46. Schafer testified that snow and ice had been on the walkways for at least a few days prior to February 6. *Id.* at ¶ 31. There had been no precipitation or accumulation of snow and ice in the Wichita area for a period of at least ten days prior to February 6, so any preexisting snow and ice was likely at least ten days old. *Id.* at ¶ 32.[2]

Monarch's ice removal policy requires that remediation begin "immediately when conditions are identified." Doc. 62 at 15. It also requires a "final clean up and sanding … after the snow has stopped for the day." Doc. 62-2 at 3. And it notes that snow and ice removal must begin at 7 a.m. or earlier, "regardless of the day of the week including weekends and holidays." *Id.* at 2.

Despite this policy, the record establishes that Monarch undertook, at most, minimal remedial efforts to clear the ice and snow from common walkways at the apartment complex. Jason Wells and Masen Schafer, Brookwood tenants, testified that they did not believe that Monarch made any attempt to remedy icy conditions on Brookwood walkways either on February 6 or on the days leading up to it. Doc. 62 at ¶ 7. Similarly, in response to Gouldner's telephone call in January 2021 to request treatment for the stairs and walkways for ice and snow, Monarch took no action. *Id.* at ¶¶ 48, 49. Monarch does claim, without

---

[2] Monarch contends, in its reply brief, that no reasonable jury could believe the evidence that there was preexisting snow and ice, as the maximum temperatures for the five days prior to February 6 were above freezing. Doc. 64 at 8. But facts raised for the first time in a reply brief are not part of the uncontested facts for summary judgment purposes since the opposing party cannot respond adequately. *See Stump v. Gates*, 211 F.3d 527 (10th Cir. 2000).

3

serious dispute, that two bags of salt were placed on the stairs and stoops on the morning of February 6. *See* Doc. 58-2 at 1.

After his fall, Gouldner initiated this action in federal court against Monarch alleging negligence-based claims. Doc. 1 at 1. Monarch filed a motion for summary judgment, arguing that the winter storm doctrine bars recovery on each negligence claim and that it had no duty to warn Gouldner of the possibility of slipping on ice and snow. Doc. 57 at 8, 13, 14.[3]

## II

While the winter storm doctrine applies to this case, there are questions of fact about how and whether Monarch's conduct complied with its duty of reasonable care under the specific circumstances. But given the open and obvious nature of ice and snow, there was no duty to warn. As a result, Monarch's motion is granted in part and denied in part.

### A

**1.** Monarch, as a possessor of land, generally owed Gouldner a duty of reasonable care. *Jones v. Hansen*, 867 P.2d 303, 310 (Kan. 1994) (abolishing the distinction between licensees and invitees and establishing that possessors of land owe non-trespassers a duty of "reasonable care"); *see also Wrinkle v. Norman*, 301 P.3d 312, 313 (Kan. 2013) (citing *Jones v. Hansen*). The "winter storm doctrine" specifies what reasonable care consists of during an ongoing storm. While a business proprietor exercising "reasonable care" must remove snow and ice from business premises once a reasonable period has lapsed following a winter storm, *Agnew v. Dillons, Inc.,* 822 P.2d 1049, 1054 (Kan. Ct. App. 1991*), aff'd, Jones v. Hansen*, 867 P.2d 303, 311 (Kan. 1994) (holding that *Agnew*'s reasoning is "sound public policy"), it does not breach the duty of reasonable care "by not removing snow or ice" from the business

---

[3] Monarch argues it is entitled to summary judgment on Gouldner's negligence per se theory. Doc. 58 at 13. But Gouldner does not argue in support of such a theory, and it is not contained in the Pretrial Order. Doc. 56. As a result, this Memorandum and Order does not consider such a claim to be in this case. *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) (claims not included in the pretrial order are waived).

premises "during an ongoing winter storm" or "a reasonable time thereafter." *Agnew*, 822 P.2d at 1054.

**2.** Gouldner makes several attempts to prevent the application of the winter storm doctrine. None are persuasive.

He first argues that *Worley v. Bradford Pointe Apartments, Inc.*, 73 P.3d 149, 153–54 (Kan. Ct. App. 2003) stands for the proposition that the winter storm doctrine does not apply to a residential landlord. Doc. 62 at 13. That is incorrect. The winter storm doctrine sets the baseline expectation for residential landlords unless the landlord has voluntarily assumed a greater duty to remove ice and snow during an ongoing storm (and with all speed thereafter). *Worley*, 73 P.3d at 153-54.

Gouldner then argues that Monarch assumed that higher duty. He contends that Monarch's Standard Operating Procedure regarding snow and ice removal indicates that it voluntarily assumed a duty to provide fast and effective snow removal, even during a storm. Doc. 62 at 14. Then when Monarch placed two bags of salt on the stairs and stoops but did not treat "the common area walkways," Monarch failed to adhere to its assumed standard of care. *Id.* at 15. "This undertaking," Gouldner argues, "expanded the duty that Defendant owed Plaintiff and its other tenants during inclement weather." *Id.*

On these facts, Monarch has not assumed a higher duty. Kansas law requires that any assumption of a higher duty be especially clear and public such that reliance is justified. *S. ex rel. S. v. McCarter*, 119 P.3d 1, 16 (Kan. 2005). Monarch's actions never rose to that level. While Monarch's policy is similar to the one in *Worley*, there is no record evidence that Monarch intentionally published its policy to residents—including Gouldner—or made repeated attempts to reassure residents that snow relief would in all cases be fast and effective or that snow and ice remediation was specifically charged to tenants as part of rent payments. In other words, there is insufficient evidence to decide at this stage that Gouldner relied to his detriment on a clear assumption of greater service. *Cf. Sall v. T's, Inc.*, 136 P.3d 471, 482 (Kan. 2006) (holding that golfers relied on the use of an air horn signaling inclement weather to their detriment even in a case where the course had no duty to warn golfers of inclement weather).

Gouldner also argues that the winter storm doctrine cannot apply because Brookwood is not a business premises. Doc. 62 at 13. That argument is not compelling. Brookwood Apartments is a business of

5

Monarch; they have an office on site and collect money in exchange for a service performed thereon—namely, providing accommodation for a fee. *See Brennan v. Arnheim & Neely, Inc.,* 410 U.S. 512 (1973) (holding that owning and managing apartments is an "enterprise" for FLSA purposes); *see also Brown v. C.I.R.,* 719 F.2d 288 (8th Cir. 1983) (per curiam) (defining "business premises" as property that bears "an integral relationship to the business activities" of an organization); *Antonio Ramirez v. Garay's Roofing, LLC,* 444 P.3d 1018 (Kan. Ct. App. 2019) (unpublished) (noting that managing an apartment was part of the defendant's business for worker's compensation purposes).

Gouldner also contends that a landlord's statutory duty of care regarding common areas precludes resort to common law concepts such as the winter storm doctrine. Doc. 62 at 14. But *Jones v. Hansen* establishes that a landlord's duty of reasonable care is a matter of common law premises liability as well as statutory guidelines. 867 P.2d 303 (Kan. 1994). Under Kansas law, the winter storm doctrine defines the common law duty of reasonable care when it comes to clearing ice and snow in the context of an ongoing storm, a duty which overlaps with the statutory duty of care regarding common areas.

**3.** Even though the winter storm doctrine applies, Monarch has not carried its burden to show that it is entitled to summary judgment. Viewed in the light most favorable Gouldner, there is no evidence to suggest when, whether, or how Monarch remedied the ice and snow after the February 6 storm. A business's failure to clear ice and snow after a reasonable period elapses following a winter storm is negligent. *Agnew*, 822 P.2d at 1054. A reasonable trier of fact could conclude from this record that is what occurred in this case. Moreover, if the ice and snow that caused Gouldner to slip predated the storm on February 6, the winter storm doctrine cannot preclude Gouldner's negligence claims. On this record, there is evidence that snow and ice was on the walkways at Brookwood for at least ten days prior to February 6.

Likewise, even if Monarch began clearing the ice and snow at exactly 11 p.m., it remains unsettled whether that was within a reasonable period. In the light most favorable to Gouldner, the storm ended eight hours earlier. A jury must determine whether this delay was reasonable under the circumstances. In this case, there is no statute or ordinance defining a reasonable period of time that would clearly apply to Monarch as a residential apartment complex. *Contra* Doc. 58 at 10 (citing

*Kaminski v. United States*, 218 F. Supp. 3d 1251, 1260 (D. Kan. 2016) (where a local ordinance clearly applied)).[4]

And, even if beginning treatment or clearance at 11 p.m. could be considered reasonable under the circumstances, Gouldner points to evidence that Monarch acted negligently by treating some but not all of the common walkways on February 6. That is a viable theory under Kansas law. *Agnew*, 822 P.2d at 1051 (recognizing the duty is one of reasonable and ordinary care); *see also Cartin v. U.S.*, 853 F. Supp. 63, 65 (N.D.N.Y. 1994) ("[I]f the hazard is created or augmented through the process of removing the snow and ice, it is negligence[.]"); *Cleek v. Ameristar Casino Kansas City*, F.4th at 637–38 (altering the condition of the snow or ice between the time it falls and the plaintiff's injury may give rise to liability under Missouri law). And this is true even crediting Monarch's contention that it had no legal duty to salt (or clear) during an ongoing storm because it has a duty to avoid making the situation worse. *Sall v. T's, Inc.*, 136 P.3d 471, 482 (Kan. 2006) (using a particular safety feature that one has no duty to use nevertheless implies a duty of reasonable care to use it correctly); *see also S. ex rel. S. v. McCarter*, 119 P.3d 1, 15 (Kan. 2005) (applying the Restatement (Second) of Torts § 323); *contra* Doc. 58 at 13. Ultimately, determining whether the work was undertaken negligently is a question for the trier of fact. *Montgomery v. Saleh*, 466 P.3d 902, 909 (Kan. 2020) (affirming that a trier of fact must resolve whether facts establish a breach of the duty of care).

**B**

Monarch contends that it owed no duty to warn Gouldner of the snow and ice present at the apartment. Doc. 58 at 12. Generally speaking, "a possessor of land is under no duty" to warn individuals on the land of "known and obvious dangers." *Miller v. Zep Mfg. Co.*, 815 P.2d 506, 514 (Kan. 1991); *see also Cunningham v. Braum's Ice Cream & Dairy Stores*, 80 P.3d 35, 39–40 (Kan. 2003) (a business owner has no duty to warn of or shelter patrons from incoming severe weather). Instead, a landlord has a duty to warn a tenant only of conditions on the land that

---

[4] Monarch also cites *Lumbley v. City of Coffeyville*, 84 P.3d 636 (Kan. Ct. App. 2004) for the proposition that it was entitled to wait till February 7 to clear ice and snow. Doc. 58 at 9. But that case is distinguishable. There is no allegation here that the ice and snow which caused Gouldner's slip and fall formed during the night of the 6th or early morning the 7th, thereby entitling Monarch to wait until morning to clear it.

involve an "unreasonable risk of physical harm" that the landlord knows about, but the tenant does not. *Lemley v. Penner*, 630 P.2d 1086, 1088 (Kan. 1981).

Knowledge requires awareness of the condition, but awareness that a condition is dangerous may be imputed. *Bonnette v. Triple D Auto Parts Inc.*, 409 P.3d 865, 871–72 (Kan. Ct. App. 2017). A dangerous condition is obvious if a reasonable person in the injured party's position would recognize the risk. *Id.* (citing the Restatement (Second) of Torts § 343A, comment b, p. 219 [1965]). Both knowledge and obviousness are fact-specific determinations driven by common sense. *See Duckers v. Lynch*, 465 P.2d 945, 949–950 (Kan. 1970) (unlocked, closed door leading to basement stairs is an open and obvious danger not akin to a "pitfall or trap"); *Miller v. Lee Apparel Co.*, 881 P.2d 576, 588 (Kan. Ct. App. 1994) (it is obvious that coveralls may catch fire when exposed to "the intense flame of a carburetor backfire"); *Bonnette*, 409 P.3d at 871-72 ("small and awkward step" plaintiff had navigated hundreds of times before and continued to voluntarily encounter in a store entrance was "open and obvious").

It is obvious that snow and ice are slippery and potentially hazardous. It is likewise obvious that snow and ice may be present on concrete walkways when the weather is below freezing and it has been snowing part of the day. *Agnew*, 822 P.2d at 1049; *see also Speakman v. Dodge City*, 22 P.2d 485, 486 (Kan. 1933) ("[W]hen ice and snow exist generally they are obvious, and everyone who uses the sidewalks at such times is on his guard, warned by the surroundings and the danger of slipping at every step."). Even if Gouldner did not see the specific ice and snow that caused him to slip, a prudent person in his position would likely have discovered the ice and snow after engaging in the reasonably diligent investigation called for by a cold, post-storm February night. *Cf. Bonnette*, 409 P.3d at 871–72. Indeed, Gouldner was aware that there had been untreated snow and ice at his complex for the preceding days and that it had been snowing during much of the day he fell. Monarch had no duty to warn him of this. *Speakman*, 22 P.2d at 486.

### III

For the foregoing reasons, Monarch's Motion for Summary Judgment, Doc. 57, is GRANTED in part and DENIED in part.

It is so ordered.

Date: December 8, 2023         s/ Toby Crouse
                               Toby Crouse
                               United States District Judge